PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

SHIRLEY PRESLEY,

*Plaintiff-Appellant,*

v.

CITY OF CHARLOTTESVILLE; RIVANNA
TRAILS FOUNDATION,

*Defendants-Appellees.*

No. 05-2344

Appeal from the United States District Court
for the Western District of Virginia, at Charlottesville.
Norman K. Moon, District Judge.
(CA-05-10-3)

Argued: May 25, 2006

Decided: September 22, 2006

Before MOTZ, TRAXLER, and SHEDD, Circuit Judges.

Affirmed in part, reversed in part, and remanded by published opinion. Judge Motz wrote the opinion, in which Judge Shedd joined. Judge Traxler wrote a separate opinion concurring in part and dissenting in part.

## COUNSEL

**ARGUED:** Deborah Chasen Wyatt, WYATT & ARMSTRONG, P.L.C., Charlottesville, Virginia, for Appellant. Stanley Paul Wellman, HARMAN, CLAYTOR, CORRIGAN & WELLMAN, Richmond, Virginia; Alvaro Antonio Inigo, TAYLOR & ZUNKA, LTD.,

Charlottesville, Virginia, for Appellees. **ON BRIEF:** Joseph Robinson, HARMAN, CLAYTOR, CORRIGAN & WELLMAN, Richmond, Virginia, for Appellee Rivanna Trails Foundation.

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

Shirley Presley, a long-time resident of Charlottesville, Virginia, brought this 42 U.S.C. § 1983 (2000) action against the City of Charlottesville and the Rivanna Trails Foundation ("RTF"), a nonprofit private corporation (collectively, the Defendants).[1] She alleges that, without her consent, the Defendants conspired to publish a map that showed a public trail crossing her yard. Presley further alleges that, even after the Defendants realized their error, they did not correct it but rather criminally prosecuted her when she herself took measures to prevent trespasses on her property. Presley asserts that the Defendants' actions violated her Fourth Amendment and due process rights. The district court granted the Defendants' motions to dismiss Presley's complaint for failure to state a claim upon which relief could be granted. For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings.

---

[1]"[M]unicipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). Although not entirely clear, Presley's complaint seems to allege that she suffered constitutional deprivations at the hands of City officials with final policy-making authority. If proved, this would render the City liable under § 1983. *Id.* Moreover, because Presley has alleged that the RTF engaged in "joint activity with" City officials, conspiring to commit the various constitutional violations, the RTF is also potentially liable under § 1983. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970); *see, e.g.*, *Soldal v. Cook County*, 506 U.S. 56, 60 n.6 (1992) (holding that private party who seized plaintiff's property could be sued along with the county under § 1983 and the Fourth Amendment when county police refused to stop "private action that the officers knew was illegal").

I.

We must take as true the factual allegations in Presley's complaint. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764 (4th Cir. 2003).

Presley's home and yard encompass less than an acre of land along the Rivanna River. In 1998, without having obtained her consent, the RTF began distributing a map that displayed a public trail — known as the Rivanna trail — crossing a portion of Presley's property. The City publicized the RTF's map on the City's official website. Relying on the Rivanna trail map, members of the public began traveling across Presley's yard, leaving behind trash, damaging the vegetation, and sometimes even setting up overnight camp sites. Initially, Presley did not realize the extent of the intrusion because she was caring for her ailing husband in a nursing home. After her husband's death in 2001, however, Presley became aware of the extent of the trail's use and began complaining to the RTF and the City about the trespasses.

Although the Defendants acknowledged their error, they assertedly neither changed the map nor stopped its distribution. Rather, several RTF officials and members of the Charlottesville city council met with Presley and asked her to give the Defendants an easement across her property in exchange for favorable tax treatment and other official favors (but not compensation). Presley refused.

The intrusions by trespassers persisted and became more severe. Presley called the City police several times to eject the trespassers, but, although the police responded regularly, they could not stem the tide. Presley then posted over one hundred "no trespassing" signs on her property, all of which were defaced and destroyed. Finally, Presley installed razor wire along the perimeter of her property. City officials responded by revising a local ordinance to prohibit Presley's protective measures and then bringing a criminal prosecution against her for violating that ordinance. The prosecution was later dismissed.

When Presley filed this action in February 2005, the City and the RTF still had not amended the trail map. Presley alleges that the Defendants have engaged in a conspiracy to violate her constitutional rights. Specifically, she asserts that the Defendants' actions constitute

an unreasonable Fourth Amendment seizure and deprive her of procedural and substantive due process rights under the Fourteenth Amendment.[2] Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Defendants moved to dismiss the action for failure to state a claim. The district court granted their motions, and Presley filed a timely appeal.

Before addressing the merits of this appeal, we note at the outset that "[t]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edward v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks omitted). For this reason, a Rule 12(b)(6) motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (explaining that a "court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" (internal quotation marks omitted)). Moreover, when, as here, a defendant seeks dismissal of a civil rights complaint, "we must be especially solicitous of the wrongs alleged" and "must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts alleged.*" *Edward*, 178 F.3d at 244 (emphasis in original) (internal quotation marks omitted).

## II.

We initially consider whether Presley has stated a claim under the Fourth Amendment, which provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unrea-

---

[2]Presley's original complaint did not expressly allege a Fourth Amendment claim, but she subsequently sought and obtained the district court's approval to amend the complaint to add such a claim. Although no amended complaint was ever filed, the district court treated the complaint as amended and dismissed the Fourth Amendment claim. The Defendants concede that the dismissal of this claim is properly before us on appeal.

sonable . . . seizures, shall not be violated." U.S. Const. amend. IV. Presley alleges that an unreasonable seizure of her property occurred here when private individuals trespassed onto her land due to the active and knowing encouragement of the Defendants.

The Fourth Amendment's protections against unreasonable seizures clearly extend to real property. *See, e.g.*, *United States v. James Daniel Good Real Property*, 510 U.S. 43, 52 (1993) (noting that the Fourth Amendment applies to the seizure of a four-acre parcel of land with a house); *Freeman v. City of Dallas*, 242 F.3d 642, 647 (5th Cir. 2001) (en banc) ("[T]he City seized the Freemans' real property for demolition.").[3] Nevertheless, the district court held that Presley had failed to allege a Fourth Amendment violation. The court offered two grounds for its holding; we find neither persuasive.

A.

The district court held that Presley's Fourth Amendment seizure claim was foreclosed because it "merely amount[ed]" to a Fifth Amendment takings claim. But the Supreme Court has time and again considered multiple constitutional claims based on the same facts.

---

[3]We recognize that the Fourth Amendment may not protect real property other than a house and its surrounding curtilage. *See Oliver v. United States*, 466 U.S. 170, 173, 176, 180 (1984) (holding that "open fields" — land "over a mile" from defendant's home and beyond its curtilage — was not among "the places and things encompassed by [the Fourth Amendment's] protections"). *But see James Daniel Good Real Property*, 510 U.S. at 52 (holding that Fourth Amendment applies to entire four-acre parcel). Even if this is so (and we do not resolve the question here), dismissal of Presley's complaint was improper. Because "[t]here is not . . . any fixed distance at which curtilage ends," a trial court must examine a number of factors to determine the bounds of the curtilage. *United States v. Breza*, 308 F.3d 430, 435 (4th Cir. 2002) (internal quotation marks omitted); *see also United States v. Dunn*, 480 U.S. 294, 301 (1987) (propounding four-factor test). To date, the district court has made no finding as to the extent of the curtilage surrounding Presley's home. The Defendants have not contended that the property allegedly seized — a trail through Presley's less-than-one-acre yard — extends beyond the curtilage, and the facts as alleged in Presley's complaint provide no basis for so concluding.

*See, e.g.*, *Locke v. Davey*, 540 U.S. 712, 720 n.3, 725 (2004) (Free Exercise, Free Speech, and Equal Protection Clauses); *Jones v. United States*, 526 U.S. 227, 243 n.6 (1999) (Fifth and Sixth Amendments); *Alexander v. United States*, 509 U.S. 544, 546-47 (1993) (rejecting First Amendment claim on the merits but remanding for reconsideration of Eighth Amendment claim).

As the Court has explained, "[c]ertain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands." *Soldal v. Cook County*, 506 U.S. 56, 70 (1992). *Accord James Daniel Good Real Property*, 510 U.S. at 50-52. Indeed, the Court has squarely rejected the argument that, on the basis of a single set of facts, a plaintiff could only assert the violation of one constitutional provision, holding instead that the plaintiff could simultaneously bring a due process claim and a Fourth Amendment claim. *See James Daniel Good Real Property*, 510 U.S. at 52; *Soldal*, 506 U.S. at 70-71. Moreover, the Court has observed that it sees "no basis for doling out constitutional protections" one at a time; rather, a court should examine each constitutional claim in turn. *Soldal*, 506 U.S. at 70.

In just one circumstance has the Supreme Court held that a single set of facts may not simultaneously give rise to two constitutional violations: when one of the provisions assertedly violated contains only a "generalized notion" of constitutional rights — such as substantive due process — and the other provision is "an explicit textual source of constitutional protection" that specifically addresses the precise harm at issue. *Graham v. Connor*, 490 U.S. 386, 395 (1989); *see also Gerstein v. Pugh*, 420 U.S. 103, 125 n.27 (1975). This is not the case here — both the Fourth Amendment Seizure Clause and the Fifth Amendment Takings Clause address specific, rather than general, harms, and the Court has never held that one specific constitutional clause gives way to another equally specific clause when their domains overlap. The Supreme Court's conclusion in *Soldal* that "[s]urely, *Graham* does not bar resort . . . to the Fourth Amendment's specific protection for 'houses, papers, and effects,'" 506 U.S. at 70-71, holds true here as well.

Moreover, contrary to the suggestion of the district court, recognizing that a Fourth Amendment claim and a Fifth Amendment claim

may arise from the same appropriation of property does not "extinguish[ ]" the distinction between a seizure and a taking. Many seizures — for example, forfeitures — are not takings at all. *See, e.g.*, *United States v. Plat 20, Lot 17, Great Harbor Neck*, 960 F.2d 200, 210 (1st Cir. 1992) ("[I]t is settled that if the federal government's actions comport, procedurally and substantively, with the terms of a lawfully enacted forfeiture statute, it may seize private property without compensating the owner."). And many takings — for example, regulatory takings — likely do not sufficiently interfere with possessory interests to constitute a seizure. *See, e.g.*, *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1014 (1992) (noting that a regulation could effect a taking even if there was no appropriation of property or ouster of the owner's possession).

More importantly, even when the same appropriation does constitute both a seizure and a taking, meaningful legal differences continue to separate a Fourth Amendment seizure claim from a Fifth Amendment takings claim. To prevail on a seizure claim, a plaintiff must prove that the government *unreasonably* seized property. *Soldal*, 506 U.S. at 71. By contrast, to make out a takings claim, a plaintiff must demonstrate that the government took property *without just compensation*. *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194 (1985). Because the legal elements of a seizure claim and a takings claim differ, there is no danger that one constitutional provision will subsume the other, even if a single set of facts provides the basis for a cause of action under both.

In sum, here, as in *James Daniel Good Real Property* and *Soldal*, "the seizure of property implicates two explicit textual sources of constitutional protection, the Fourth Amendment and the Fifth." *James Daniel Good Real Prop.*, 510 U.S. at 50 (internal quotation marks omitted); *Soldal*, 506 U.S. at 70. In such circumstances, the Supreme Court has directed that "the proper question is not which Amendment controls but whether either Amendment is violated." *James Daniel Good Real Prop.*, 510 U.S. at 50.

Notwithstanding this clear directive, the Defendants here, echoing those in *James Daniel Good Real Property* and *Soldal*, assert that one Amendment (here, as in *Soldal*, the Fifth) "provides the full measure" of relief. *See James Daniel Good Real Prop.*, 510 U.S. at 50. And

echoing the lower court in *Soldal*, the dissent accepts that argument on the rationale that to do otherwise would permit the Fourth Amendment to undermine the Fifth. *Compare Soldal v. County of Cook*, 942 F.2d 1073, 1078-79 (7th Cir. 1991) ("[T]he particular distinction that we have just elaborated . . . between a Fourth Amendment seizure and other types of interference with property is necessary . . . if the Fourth Amendment is not to swallow the due process clause."), *rev'd*, 506 U.S. 56 (1992), *with post* at 17 ("[T]o allow [Presley] to pursue relief under the Fourth Amendment here would undercut well-established Fifth Amendment takings jurisprudence."). Yet, the Supreme Court firmly — and unanimously — rejected that view in *Soldal*; and reiterated that rejection in *James Daniel Good Real Property*.

The dissent ignores *James Daniel Good Real Property* and seeks to distinguish *Soldal* from the case at hand on the basis of a single purported factual difference. The dissent concedes that Presley, like the Soldals, has alleged a seizure, but argues that in the *Soldal* seizure there was "no element of public use," *post* at 22, while the seizure here was effectuated "for permanent public use," *id*. at 18. In the dissent's view, "the presence of a public use is a critical fact that distinguishes this case from *Soldal*. . . ." *Id*. at 22.

The dissent's "critical" distinction fails. Although the seizure at issue in *Soldal* — governmental assistance with an illegal eviction — may not have been for a public use,[4] nothing in *Soldal* holds, or even suggests, that the Fourth Amendment only applies to seizures for non-public uses. Indeed, the *Soldal* Court reached precisely the opposite conclusion — that the "reason" for a seizure "is wholly irrelevant to

---

[4]Then again, in light of the elasticity given to the term "public use," the government action in *Soldal* to preserve safety and order could well be characterized as serving a public purpose. *See Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 241 (1984) (to satisfy the public use requirement, the taking must be "rationally related to a conceivable public purpose"); *Faith Temple Church v. Town of Brighton*, 405 F. Supp. 2d 250, 255-56 n.4 (W.D.N.Y. 2005) (noting that the Supreme Court has "adopted an expansive definition of public use (essentially equating it with any use that serves a public purpose)" (quoting *Kelo v. City of New London*, 125 S. Ct. 2655, 2663 (2005) (internal quotation marks omitted))).

the threshold question whether the Amendment applies." *Soldal*, 506 U.S. at 69. As *Soldal* explained, "the right against unreasonable seizures would be no less transgressed if the seizure of the house was undertaken to collect evidence, verify compliance with a housing regulation, effect an eviction by the police, or on a whim, *for no reason at all*." *Id.* (emphasis added).[5] Whether Presley alleges that the Defendants have seized her property for a public purpose — or by mistake and for no reason at all — the Fourth Amendment applies to the seizure.

Like the lower court in *Soldal*, the dissent here worries that applying the Fourth Amendment to seizures of real property would lead to "unworkable" results. *Compare post* at 18, 20, *with Soldal*, 942 F.2d at 1077. But the Supreme Court in *Soldal* expressly rejected this concern, explaining why it is appropriate to subject even seizures for a public purpose to constitutional scrutiny. *Soldal* pointed out that because "reasonableness" is still the "ultimate" Fourth Amendment standard, numerous seizures of the "type" in *Soldal*, including those pursuant to a court order, "will survive constitutional scrutiny," since a "showing of unreasonableness" in such circumstances will be a "laborious task indeed." *Soldal*, 506 U.S. at 71. Thus, the *Soldal* Court itself rejected the dissent's theory: a seizure for a public purpose may well be reasonable and so "survive constitutional scrutiny" under the Fourth Amendment, but an allegation that a seizure was for a public purpose does not somehow eliminate Fourth Amendment scrutiny.[6]

---

[5]Although in *Soldal* the Court addressed the distinction between privacy and property, the Court's language is unequivocal and the principle — that the "reason" for the seizure is "wholly irrelevant" — applies equally here.

[6]Moreover, contrary to the dissent's contention, it is not at all clear that "the only reasonable inference from the facts alleged in the complaint . . . is that Presley's property has been put to public use." *Post* at 18 n.3. Reading her allegations in the light most favorable for her — as we must at this juncture — Presley has alleged, at least alternatively, that the Defendants seized her property in error, and thus for a non-public use. It seems that if anything can still be characterized as a private use, it is a seizure committed in error and thus with no public purpose. *See Montgomery v. Carter County, Tennessee*, 226 F.3d 758, 765-66 (6th Cir. 2000) (holding that the government's erroneous designation of a private driveway as a public road "presents us with a rare real-life example" of a taking for private use). However, because *Soldal* teaches that the purpose of the seizure does not matter, we need not pursue this distinction.

Put simply, that Presley may also have a claim under the Fifth Amendment's Takings Clause does not bar her from bringing a Fourth Amendment seizure claim.

## B.

The district court alternatively held that no seizure had occurred here because Presley was not "completely deprived . . . of her possessory interests in her property." But a deprivation need not be this severe to constitute a seizure subject to constitutional protections. Rather, the Fourth Amendment also governs temporary or partial seizures. *See United States v. Place*, 462 U.S. 696, 705 (1983) ("The intrusion on possessory interests occasioned by a seizure of one's personal effects can vary both in its nature and extent."); *Pepper v. Village of Oak Park*, 430 F.3d 805, 809 (7th Cir. 2005) (noting that "substantial damage to [a] couch" was a seizure); *United States v. Gray*, 484 F.2d 352, 356 (6th Cir. 1973) (holding that temporarily removing rifles from a closet to copy down their serial numbers was a seizure).

In fact, the Supreme Court has held that a seizure of property occurs whenever "there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Presley has alleged an "interference with" her "possessory interests" that is clearly "meaningful"; indeed, this interference has assertedly been disruptive, stressful, and invasive. Her complaint states that she has been deprived of the use of part of her property due to the regular presence of a veritable army of trespassers who freely and regularly traverse her yard, littering, making noise, damaging her land, and occasionally even camping overnight. This constant physical occupation certainly constitutes a "meaningful interference" with Presley's "possessory interests" in her property.

Of course, it is private individuals, not City officials, who have actually interfered with Presley's possessory interests here. Although private actions generally do not implicate the Fourth Amendment, when a private person acts "as an agent of the Government or with the participation or knowledge of any governmental official," then the private person's acts are attributed to the government. *Jacobsen*, 466 U.S. at 113 (internal quotation marks omitted). The government need

not compel nor even involve itself directly in the private person's actions. For example, in *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 614-15 (1989), the Supreme Court held that "breath and urine tests required by private railroads" implicated the Fourth Amendment when the railroads voluntarily complied with federal regulations governing such tests.[7]

As in *Skinner*, several factors in this case "combine to convince us that [the Defendants] did more than adopt a passive attitude toward the underlying private conduct" and that therefore the acts of private persons are attributable to the Defendants. *See id.* at 615. At some point, the Defendants knew that their map was erroneous.[8] They also knew that the Rivanna trail map would encourage public use of the trail — this was, after all, the map's purpose. Finally, Defendants also knew that the City's involvement would communicate to trail users

---

[7]Such cases differ markedly from the more usual situation in which the government merely knows of or acquiesces in a private person's search or seizure, whose fruits (*e.g.*, drugs or a confession) are then appropriated by the government for its own purposes. *See, e.g.*, *United States v. Jarrett*, 338 F.3d 339 (4th Cir. 2003); *United States v. Ellyson*, 326 F.3d 522 (4th Cir. 2003). In those cases, because government involvement in the actual search or seizure is relatively slight, courts generally require that "the private individual intended to assist law enforcement" before they conclude that the government is sufficiently implicated in the search or seizure to trigger the Fourth Amendment. *Jarrett*, 338 F.3d at 344; *see also Ellyson*, 326 F.3d at 527. However, in cases like the one at hand (or like *Soldal* and *Skinner*), the private person's motivation is not critical because the government is more heavily involved in the search or seizure. That is, rather than merely being aware of or acquiescing in private conduct, the government actively encourages, facilitates, or otherwise participates in the private search or seizure. Such involvement clearly triggers Fourth Amendment protections, regardless of the private party's intentions. *See Soldal*, 506 U.S. at 58-59, 61-62 (applying Fourth Amendment when police facilitated a private landlord's self-interested seizure of a motor home); *Skinner*, 489 U.S. at 609-12 (applying Fourth Amendment when government regulations facilitated private employers' self-interested collection of employees' blood and urine samples).

[8]Because seizures must be intentional, *see Brower v. Inyo County*, 489 U.S. 593, 596 (1989), no seizure could have occurred before the Defendants knew that they had erred.

that there were no legal barriers to their use of the entire trail, including the portion that cut through Presley's property. *Cf. Rossignol v. Voorhaar*, 316 F.3d 516, 525-26 (4th Cir. 2003) (seizure attributable to the government when official "gave 'significant encouragement' to its [allegedly private] perpetrators").

Nevertheless, despite this knowledge, the Defendants assertedly did nothing to correct their error, and consequently, in reliance upon the erroneous map, private individuals trespassed onto Presley's yard. Moreover, when Presley attempted to protect her own property, the Defendants initiated a meritless criminal prosecution against her to force her to take down the razor wire. *See Soldal*, 506 U.S. at 60 n.6 (noting that Fourth Amendment is implicated when government officials prevent lawful resistance against seizures effected by private persons). These factors "are clear indices of the [Defendants'] encouragement, endorsement, and participation, and suffice to implicate the Fourth Amendment." *Skinner*, 489 U.S. at 615-16; *see also United States v. Walther*, 652 F.2d 788, 791 (9th Cir. 1981) (noting that a private search is attributed to the government if the government is "involved . . . indirectly as an encourager of the private citizen's actions").

## C.

In sum, we cannot agree with the district court that Presley "can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley*, 355 U.S. at 45-46. Although she ultimately may not be able to prevail, Presley has at least raised a Fourth Amendment seizure claim by alleging that private individuals, knowingly encouraged and aided by the Defendants, trespassed onto her property. Accordingly, we reverse the district court's dismissal of this claim.

## III.

Although Presley's Fourth Amendment claim survives the Defendants' motion to dismiss, her procedural due process claim does not. Even assuming that Presley suffered a deprivation in this case, the district court correctly recognized that because the only deprivation

that she has alleged is effectively a physical taking,[9] an inverse condemnation action for just compensation (which is clearly available to her under state law) provides all the process to which she is due.

In so holding, we recognize that Presley asserts that she was not afforded predeprivation notice or a hearing. Ordinarily, such predeprivation process is required; "absent the necessity of quick action by the State or the impracticality of providing any predeprivation process, a post-deprivation hearing [is] constitutionally inadequate." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982) (internal quotation marks omitted).

But a taking differs from other deprivations, both in its importance to governance and in the additional procedural protections provided whenever a taking occurs. As the Supreme Court explained long ago, "The taking of private property for public use upon just compensation is so often necessary for the proper performance of governmental functions that the power is deemed to be essential to the life of the state." *Georgia v. City of Chattanooga*, 264 U.S. 472, 480 (1924). And, when the facts of a case establish a taking (regardless of whether the plaintiff has alleged one), the owner of the taken property is constitutionally entitled to two protections not afforded to others suffering property deprivations: the government must demonstrate that the taking was for a public use, and the government must afford the owner just compensation. The government's heightened interest in eminent domain and the unique safeguards surrounding takings necessarily affect any procedural due process analysis. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (noting that the "probable value" of "substitute procedural safeguards" and the "Government's interest" are two of the three "distinct factors" to be weighed in analyzing whether the process provided was adequate).

---

[9]The term "physical taking" refers to a taking that occurs when the government "enter[s] into physical possession of property without authority of a court order." *United States v. Dow*, 357 U.S. 17, 21 (1958). It stands in contrast to a taking pursuant to condemnation proceedings governed by state law. *Id.* The Defendants do not argue that they have ever initiated condemnation proceedings in this case; thus, we deal only with a physical taking here.

Perhaps in light of these concerns, a century of precedent has created a distinct body of due process law for cases like the present one in which the challenged deprivation is a physical taking. Under these precedents, government entities need not provide a hearing before they physically take private property, so long as the taking is for a public use. *Bragg v. Weaver*, 251 U.S. 57, 58 (1919) ("[A] hearing thereon is not essential to due process in the sense of the Fourteenth Amendment."); *see also Joslin Mfg. Co. v. City of Providence*, 262 U.S. 668, 670, 678 (1923) (holding that a city is authorized to decide whether to take land "ex parte, without appeal or opportunity for hearing and decision by an impartial tribunal").

Nor need the government provide notice before effecting a physical taking. Rather, in the takings context, the Due Process Clause only entitles property owners to adequate notice prior to a judicial condemnation or just-compensation proceeding. *See Schroeder v. City of New York*, 371 U.S. 208, 212-13 (1962); *Walker v. City of Hutchinson*, 352 U.S. 112, 115 (1956). Entitlement to notice in this context merely follows the well-established rule, articulated in *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 314 (1950), that notice is "[a]n elementary and fundamental requirement of due process in any [judicial] proceeding which is to be accorded finality." Thus, when a government entity condemns land, notice must precede the initiation of judicial proceedings that will finally determine the value of that land, whether those proceedings occur before the government takes physical possession of the land, *see Schroeder*, 371 U.S. at 212-13, or afterward, *see Bailey v. Anderson*, 326 U.S. 203, 205 (1945). But the government need not provide notice prior to a physical taking that, as here, is not itself preceded by *any* judicial process.

Rather, when the alleged deprivation is effectively a physical taking, procedural due process is satisfied so long as private property owners may pursue meaningful postdeprivation procedures to recover just compensation. *See Bailey*, 326 U.S. at 205 (holding that "it has long been settled that due process does not" require a hearing "in advance of [land's] occupation . . . provided only that the owner have opportunity . . . to be heard" prior to a final determination "of the value of the land taken"); *Fulcher v. United States*, 632 F.2d 278, 291 (4th Cir. 1980) (en banc) (Phillips, J., concurring) ("[T]here can be no questions of entitlement to due process notice as an incident to the

prior taking by physical seizure; all the process due in respect of the right to compensation is supplied by the availability of the inverse condemnation cause of action.").

These well-established principles govern the case at hand. If we accept Presley's factual allegations, as we must at this stage in the proceedings, then the City has physically taken, and therefore deprived Presley of, some of her property. Nevertheless, Presley cannot show that she was denied adequate procedures to obtain just compensation. Under Virginia law, aggrieved property owners may file an inverse condemnation action pursuant to Virginia's declaratory judgment statute. *See Richmeade, L.P. v. City of Richmond*, 594 S.E.2d 606, 607 (Va. 2004) (citing Va. Code Ann. § 8.01-184 (West 2000)). If they prevail, they may obtain a court order requiring that the relevant governmental body comply with Virginia's established procedures for determining compensation. *See* Va. Code Ann. § 8.01-187 (West 2000). Because Virginia law provides an adequate procedure for obtaining compensation for a taking — a procedure readily available to Presley — Presley has alleged no denial of procedural due process.

One final note: Our holding today may seem to raise the specter of government entities deciding to physically take property (for which no predeprivation process is due) rather than pursuing the more gruelling path of condemnation proceedings. But what condemnation proceedings lack in procedural ease, they gain in security. As Judge J. Dickson Phillips has noted:

> While a taking by physical invasion, being completely efficacious to acquire title, might be thought preferable to the administrative difficulties attendant upon formal condemnation proceedings, there are of course overpowering reasons to prefer the latter. Properly conducted, the formal proceeding can, and typically does, dispose of all issues and conclude all persons in a setting chosen by the condemning authority. Taking by physical invasion on the other hand simply exposes the government to continued "inverse condemnation" actions by various claimants proceeding as and when they will.

*Fulcher*, 632 F.2d at 291 n.11 (Phillips, J., concurring). We believe that Judge Phillips's insight applies with undiminished force today.

IV.

Finally, we turn to Presley's substantive due process claim. Her complaint alleges an "abuse of governmental power" based on the defendants' willful encouragement of private individuals to trespass onto her property.

*Graham v. Connor* controls. *Graham* held that substantive process cannot independently support a claim when "an explicit textual source of constitutional protection" governs the precise conduct at issue. 490 U.S. at 395. For the reasons discussed above, all of Presley's claims fall within the ambit of the Fourth Amendment Seizure Clause and the Fourteenth Amendment's procedural due process protections. Thus, those provisions, "not the more generalized notion of 'substantive due process,' must be the guide for analyzing [Presley's] claims." *Id.*

V.

For the foregoing reasons, we affirm the judgment of the district court dismissing Presley's substantive and procedural due process claims, reverse the judgment of the district court dismissing her Fourth Amendment seizure and conspiracy claims,[10] and remand for further proceedings consistent with this opinion.

*AFFIRMED IN PART, REVERSED IN PART,*
*AND REMANDED*

TRAXLER, Circuit Judge, concurring in part and dissenting in part:

Today's decision, in my view, departs from a long and well-established body of law under the Fifth Amendment and drastically

---

[10]Because Presley has alleged that the Defendants conspired to commit a Fourth Amendment seizure, she has stated a claim for a conspiracy to violate her constitutional rights. *See, e.g.*, *Mendocino Envt'l Ctr. v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999).

changes important substantive and procedural aspects of federal inverse condemnation actions. As I explain below, permitting Presley to pursue her claim under the Fourth Amendment results in nothing less than the application of a new standard of liability, the creation of a new spectrum of damages, and the elimination of procedural prerequisites for pursuing an inverse condemnation claim in federal court.

According to Presley's complaint, the City "seized" a strip of her land for a public use — to establish a section of a public hiking trail along the Rivanna River. She does not want her land used by the public, however, and sued to stop the City from representing to the public that her property is open for public use as part of the Rivanna trail system. Instead of raising a Fifth Amendment claim that the City is taking her property without just compensation, Presley asserts only that she suffered an unreasonable seizure of her property in violation of the Fourth Amendment. My belief is that Presley's allegations present a quintessential takings claim under the Fifth Amendment and that to allow her to pursue relief under the Fourth Amendment here would undercut well-established Fifth Amendment takings jurisprudence.[1]

At first glance, the Fourth Amendment may appear to apply in this situation. There was a seizure of her property,[2] and an easy argument

---

[1]The complaint alleges that the City engaged in a conspiracy with the Rivanna Trails Foundation to deprive Presley of her exclusive ownership rights. The conspiracy allegations, however, do not change the relevant constitutional analysis here.

[2]A Fourth Amendment seizure occurs whenever "there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). In this case, the City significantly interfered with perhaps the most important aspect of real property ownership — the right to exclude others from one's property. *See Kaiser Aetna v. United States*, 444 U.S. 164, 179-80 (1979) ("[T]he 'right to exclude,' so universally held to be a fundamental element of the property right, falls within this category of interests that the Government cannot take without compensation.") (footnote omitted); *Hendler v. United States*, 952 F.2d 1364, 1374 (Fed. Cir. 1991) ("In the bundle of rights we call property, one of the most valued is the right to sole and exclusive possession — the right to *exclude* strangers, or for that

can be made that the seizure was unreasonable. In my judgment, however, the fact that the City seized her real property for permanent public use puts this matter under the Takings Clause of the Fifth Amendment exclusively.[3] *See Nollan v. California Coastal Comm'n*, 483 U.S. 825, 832 (1987) (explaining that a Fifth Amendment taking by physical occupation occurs "where individuals are given a permanent and continuous right to pass to and fro, so that the real property may continuously be traversed, even though no particular individual is permitted to station himself permanently upon the premises"). The Supreme Court's Fifth Amendment case law establishes both procedural requirements and remedies tailored to circumstances involving landowners who are informally dispossessed of all or a portion of their real property by the government for an ongoing public use. As explained below, permitting Presley to invoke the Fourth Amendment here would allow her to make an end-run around this well-established body of law. And, just as significantly, I believe that application of Fourth Amendment reasonableness standards to Presley's claim would ultimately prove to be unworkable.

First, to say the City's actions may fall within the definition of a seizure does not necessarily mean Presley's claim arises under the Fourth Amendment. Indeed, a "seizure" as defined in Fourth Amendment cases occurs in every case where there is a taking by physical occupation as opposed to a regulatory taking. But the application of the Fourth Amendment to cases like this one would upset the well-established and clear procedure for raising constitutional challenges to this type of taking by the government, requiring the plaintiff first

---

matter friends, but especially the Government."). Although I would ultimately affirm the district court's dismissal of Presley's Fourth Amendment claim, I would not do so based on the district court's reasoning that no seizure occurred for purposes of the Fourth Amendment. The facts alleged by Presley are sufficient to satisfy the technical definition of "seizure" for purposes of a motion to dismiss.

[3]Although Presley's complaint does not contain the phrase "public use," the only reasonable inference from the facts alleged in the complaint — that the City turned part of her property into a riverside hiking trail open to the public — is that Presley's property has been put to public use.

to seek in state court compensation for the taking and permitting the plaintiff to proceed to federal court only if just compensation is denied. *See Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194-95 (1985). Allowing a plaintiff to bring a Fourth Amendment claim *any time* a state government physically seizes real property for public use, as Presley contends we must, would severely undermine the process contemplated by the Supreme Court in *Williamson*.[4]

Moreover, permitting plaintiffs like Presley to proceed under the Fourth Amendment would expose governments to a radically different measure of damages than would be available in a traditional inverse condemnation action where the plaintiff's damages are generally limited to the fair market value of the property taken. *See Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 10 (1984) ("'Just compensation'. . . means in most cases the fair market value of the property on the date it is appropriated."). A plaintiff asserting a Fourth Amendment violation, however, would be entitled to recover the full measure of damages typically available in a § 1983 action, including damages for the emotional distress caused by the government's unreasonable conduct, and even punitive damages in the proper case. *See Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 305-06 (1986) ("We have repeatedly noted that 42 U.S.C. § 1983 creates a species of tort liability in favor of persons who are deprived of rights, privileges, or immunities secured to them by the Constitution. Accord-

---

[4]There is some question about whether a plaintiff who contends that a taking was unconstitutional because the land was not taken for a public purpose must resort to state remedies before seeking relief in federal court. *Compare Montgomery v. Carter County, Tenn.*, 226 F.3d 758, 768 (6th Cir. 2000) (concluding that plaintiff who challenges a taking on private-purpose grounds need not first avail himself of state remedies), *and Armendariz v. Penman*, 75 F.3d 1311, 1320-21 & n.5 (9th Cir. 1996) (en banc) (same), *and Samaad v. City of Dallas*, 940 F.2d 925, 936-37 (5th Cir. 1991) (same), *with Covington Court, Ltd. v. Village of Oak Brook*, 77 F.3d 177, 179 (7th Cir. 1996) (concluding that a plaintiff who contends taking was improper because it was done for a private purpose must exhaust state remedies before bringing suit in federal court). As I noted previously, however, the facts alleged do not reasonably permit Presley to challenge the City's action on the grounds that the taking was for a private use.

ingly, when § 1983 plaintiffs seek damages for violations of constitutional rights, the level of damages is ordinarily determined according to principles derived from the common law of torts.") (foot-note, citations, and internal quotation marks omitted); *Smith v. Wade*, 461 U.S. 30, 56 (1983) ("[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."). To allow a plaintiff's characterization of her claim to effect such a radical difference in the government's potential liability seems unwise, to say the least.

I also believe that permitting Presley to pursue a Fourth Amendment claim under the facts of this case is inconsistent with existing Fourth Amendment jurisprudence. Most Fourth Amendment seizure cases involve relatively brief and completed seizures, such as traffic stops and arrests. But where the seizure is ongoing and indefinite, courts typically reject arguments that a "continuing seizure" can be challenged under the Fourth Amendment. *See, e.g., Lee v. City of Chicago*, 330 F.3d 456, 460-66 (7th Cir. 2003) (rejecting Fourth Amendment claim in case where police refused to return an impounded car, concluding that such a "continuing seizure" must be analyzed under the Due Process Clause); *Fox v. Van Oosterum*, 176 F.3d 342, 351 (6th Cir. 1999) (explaining that "[o]nce the act of taking the property is complete, the seizure has ended and the Fourth Amendment no longer applies"); *cf. Riley v. Dorton*, 115 F.3d 1159, 1163-64 (4th Cir. 1997) (en banc) (rejecting concept of a Fourth Amendment "continuing seizure" and concluding that the Fourth Amendment governed only those claims of excessive force occurring at the time of arrest; claim that excessive force was used later, when plaintiff was being interviewed at the police station, is governed by the Fourteenth Amendment standard applicable to pre-trial detainees). Since the seizure at issue in this case is a continuing one, the cases rejecting the "continuing seizure" concept and placing a temporal restriction on Fourth Amendment claims would seem to foreclose Presley's claim that she may proceed under the Fourth Amendment.

Even assuming, however, that the continuing nature of the seizure was not an insuperable obstacle to Presley's Fourth Amendment claim, application of the general Fourth Amendment standard would

simply be unworkable in cases like this one. Reasonableness is the overarching standard in Fourth Amendment inquiries. I cannot envision a case where a government taking of private property for a public purpose without just compensation, which is what Presley alleges happened in this case, would be anything but unreasonable *per se*. To accept Presley's characterization of her claim as arising under the Fourth Amendment would thus create an entire class of constitutional tort claims where liability on the part of the government would be virtually automatic and where the government would be exposed to the full panoply of common-law damages.

Presley relies almost exclusively on the Supreme Court's opinion in *Soldal v. Cook County*, 506 U.S. 56 (1992). In *Soldal*, police officers facilitated the improper repossession of a mobile home by private parties. The owner of the mobile home brought an action under 42 U.S.C.A. § 1983 alleging that the police officers violated the Fourth Amendment and the Due Process Clause of the Fifth and Fourteenth Amendments. The Seventh Circuit rejected the plaintiff's efforts to bring a Fourth Amendment claim against the officers, concluding that the claim was properly viewed as alleging, at most, a due process claim. The Supreme Court reversed, holding that "[c]ertain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands." *Id.* at 70. The Court noted that the Fourth Amendment is not limited in its application to cases arising in a criminal context and that the Fourth Amendment protects private property interests as well as privacy interests. *See id.* at 69. Because the actions alleged by the plaintiff implicated those interests, the Court concluded that the complaint alleged a "seizure" within the meaning of the Fourth Amendment and that the plaintiff must be permitted to proceed with that claim. *See id.* at 72.

While the *Soldal* Court concluded that a seizure within the meaning of the Fourth Amendment had occurred in that case, nothing in *Soldal* indicates that every claim involving a seizure gives rise to a Fourth Amendment claim. A "seizure" as defined in Fourth Amendment cases occurs in *every* case where the government physically takes private property for use by members of the general public. I am aware of no case, however, where the Supreme Court has permitted a plaintiff to challenge a physical taking of property for public use by argu-

ing that the government's actions were unreasonable under the Fourth Amendment.

Thus, the consequences of a conclusion that Presley may maintain her claim under the Fourth Amendment are substantial, and I do not believe that *Soldal* compels the conclusion Presley asserts. Unlike the case at bar, there was no element of public use at issue in *Soldal*; the police in *Soldal* used their authority to help a private party carry out a re-possession for purely private purposes. In my view, the presence of a public use is a critical fact that distinguishes this case from *Soldal* and makes it unwise to apply the *Soldal* analysis to the facts of this case. It is worth noting again that every physical taking of property for public use involves a seizure as that term is defined in *Soldal* and other Fourth Amendment cases. I am unwilling to conclude that *Soldal*'s rather unremarkable holdings — that a given set of facts can sometimes support more than one constitutional claim and that a seizure within the meaning of the Fourth Amendment occurred when state actors facilitated the forceful wrenching of a mobile home from its moorings and the moving of the mobile home to a different site -— silently worked a sea change in the law of eminent domain.

Accordingly, I would hold that although the district court erred by concluding that no seizure occurred in this case, the dismissal of Presley's complaint was nonetheless proper. *See, e.g.*, *Cochran v. Morris*, 73 F.3d 1310, 1315 (4th Cir. 1996) (en banc) (noting "the well-recognized authority of courts of appeals to uphold judgments of district courts on alternate grounds"). Although Presley might be unhappy with the City's apparent decision to place a public trail across her property, the exercise of eminent domain does not require the consent of the affected landowner. Her remedy is to initiate an inverse condemnation action in state court and seek just compensation for the public easement that the City created over a portion of her property. *See Williamson*, 473 U.S. at 194-96. At that point, the City would be required to decide how to proceed. If the City believes that the public is best served by the trail continuing to cross Presley's property, then it would be required to pay her just compensation for the permanent easement across her land. If the City were instead to decide that the trail could be relocated so that it did not cross Presley's property, then it would be required to compensate her only for the time that easement was in place. If Presley does not receive just

compensation through the state proceedings, her Fifth Amendment claim would then be ripe. But until then, Presley's constitutional claim based on the taking of her property for a public purpose is premature and she cannot circumvent the ripeness hurdle by couching her claim in Fourth Amendment terms. Thus, I believe the district court properly dismissed this claim.

In sum, I concur in Parts I, III, and IV of the majority opinion but respectfully dissent from Part II.