COURT OF APPEALS OF VIRGINIA


Present:   Judges Annunziata, Felton and McClanahan
Argued at Alexandria, Virginia


GREGORY WILLIAM SULLIVAN

                                                        OPINION BY
v.        Record No. 0701-03-4          JUDGE ROSEMARIE ANNUNZIATA
                                                        APRIL 13, 2004
KAREN ANN JONES, F/K/A
 KAREN ANN KNICK SULLIVAN


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Kathleen H. MacKay, Judge

        Richard M. Wexell (Lawrence D. Diehl; Richard M. Wexell &
        Associates, on brief), for appellant.

        Alan B. Plevy (Anna B. Marshall; Smolen Plevy, on brief), for
        appellee.


        Gregory William Sullivan (father) appeals from an order allowing Karen Ann Jones

(mother) to remain in South Carolina with their daughter, Kylie.  Mother, who had primary

physical custody of Kylie since her divorce from father, moved from Northern Virginia to South

Carolina after the trial court permitted her to relocate by order dated November 30, 2001.  Father

appealed the November 30, 2001 order, and we reversed it on August 27, 2002, in Sullivan v.

Knick, 38 Va. App. 773, 569 S.E.2d 430 (2002) (hereinafter "Sullivan I").  After our decision in

Sullivan I, mother again petitioned the trial court for permission to stay in South Carolina and to

modify the court's order granting father visitation rights.  Father cross-petitioned the court for

primary physical custody of the child.  Upon a hearing ore tenus, the trial court entered an order

granting mother's petition, from which father now appeals.  Finding no error in the trial court's

decision, we affirm.

## I. Background

The parents in this case were before the Court in <u>Sullivan I</u>. Because many of the facts in <u>Sullivan I</u> are pertinent to the disposition of the instant case, we recite them below.

The parents lived in Northern Virginia while married. Kylie was born during the parents' separation on July 13, 1998. <u>Sullivan I</u>, 38 Va. App. at 776, 568 S.E.2d at 432. Under a settlement agreement incorporated into the final decree of divorce on May 24, 1999, mother was granted primary physical custody of Kylie. <u>Id.</u> Father petitioned the trial court on January 9, 2001, for expanded visitation time with Kylie following his remarriage and his acquisition of a residence closer to his former wife's home. <u>Id.</u> at 776-77, 568 S.E.2d at 432. The trial court granted father's request on June 29, 2001, and significantly expanded his periods of visitation with Kylie. <u>Id.</u> His visitation "included alternating weekends, alternating Thursday evenings, extended periods during the holidays and each summer, and an additional 'uninterrupted week' each year." <u>Id.</u> at 777 n.2, 568 S.E.2d at 432 n.2.

Father married Lynn Sullivan in 2000, and mother married Steven Jones in 2001. Following her marriage to Steven Jones, mother petitioned the court to allow her to relocate to South Carolina with her new husband. By order dated November 30, 2001, the trial court allowed mother to move to South Carolina. <u>Id.</u> at 781, 568 S.E.2d at 434. The trial court also revised father's visitation schedule, providing him with extended but less frequent contacts with Kylie. <u>Id.</u> Mother subsequently moved to South Carolina, and she still resides there today. Father appealed the trial court's November 30, 2001 order.

On August 27, 2002, we reversed the trial court's order allowing relocation. We found that the evidence at the trial court established that the move was solely in mother's best interests and that the move "would disrupt the positive involvement and influence of father in Kylie's life, a result at odds with her best interests." <u>Id.</u> at 784-85, 568 S.E.2d at 436. We reversed and

remanded the case "for further proceedings consistent with this opinion." Id. at 785, 568 S.E.2d at 436. Mother did not seek a rehearing by the panel or an en banc review.

Subsequent to our decision in Sullivan I, father filed a motion on September 24, 2002, requesting that the court enter an order consistent with our ruling. Mother filed a petition on September 25, 2002, asking the court to modify the June 29, 2001 order, which granted substantial visitation rights to the father, and to allow Kylie to remain in South Carolina. The court held a hearing on November 7, 2002, to determine the appropriate action on remand. In that hearing, father argued that awarding him primary physical custody of Kylie was the only way to implement this Court's ruling in Sullivan I in the event mother refused to return to Northern Virginia with the child. The trial court entered an order on November 22, 2002, annulling its previous order allowing relocation, requiring that Kylie be returned to Northern Virginia, and, in the event that mother refused to comply with the court's order, ordering Kylie be placed in the primary physical custody of her father. At father's request, the trial court delayed implementation of its order until January 1, 2003, and it gave the parents leave to "petition the court for a full hearing on any issue that they think is important given this ruling requiring the return of the child."

On December 6, 2002, father filed a petition seeking primary physical custody of Kylie. He also filed a demurrer and a plea in bar to mother's September 25, 2002 petition on the ground that the issues she sought to litigate were barred by this Court's decision in Sullivan I. The trial court overruled father's demurrer, denied his plea in bar on December 20, 2002, and set a hearing to determine the merits of mother's motion to modify and father's petition for a change in custody. That hearing was held January 6-7, 2003, some fourteen months after Kylie's relocation.

At the hearing on the parties' petitions, mother testified as to Kylie's life in South Carolina, including Kylie's attachment to her extended family, her involvement in church, her level of happiness, and her enrollment in preschool and extracurricular activities. Father testified that his less frequent contact with Kylie strained their relationship and that the long trips to South Carolina were difficult for him and his wife. He further explained that he had made arrangements for Kylie to be placed in a day-care facility in Northern Virginia should the court award him primary physical custody of the child. Finally, he stated that he believed it would be in Kylie's best interests to be placed in his custody because she benefited from contact with him.

Upon completion of the hearing, the trial court determined it was in Kylie's best interests to remain in the primary physical custody of her mother in South Carolina. The trial court's decision was memorialized in an order entered February 24, 2003, which also expanded father's visitation rights.

Father appeals the trial court's decision, arguing that it erred in denying his demurrer and plea in bar to wife's September 25, 2002 petition, that it failed to follow this Court's decision in Sullivan I, that it erred in conducting an extended evidentiary hearing on January 6-7, 2003, that it erred in allowing Kylie's relocation, and that it erroneously denied his petition for primary physical custody of Kylie.

## II. Trial Court Did Not Err in Denying Father's Plea in Bar and Demurrer

Father contends that the trial court erred in denying his demurrer and plea in bar to mother's September 25, 2002 motion to modify. In his plea in bar, father argued that, under Sullivan I, Kylie's relocation was res judicata and was barred from further consideration. In his demurrer, father similarly argued that, because the issue of Kylie's relocation had been decided in Sullivan I, mother's motion did not state facts upon which the court could lawfully conclude

that a change in circumstances had occurred. We find that the trial court did not err in denying

father's plea in bar and in overruling his demurrer.

A. Standard of Review

The standards of review for a defensive plea in bar and a demurrer are substantially

similar.

> The defensive plea in bar shortens the litigation by reducing it to a distinct issue of fact which, if proven, creates a bar to the plaintiff's right of recovery. The moving party carries the burden of proof on that issue of fact. See Campbell v. Johnson, 203 Va. 43, 47, 122 S.E.2d 907, 909 (1961). Where no evidence is taken in support of the plea, the trial court, and the appellate court upon review, must rely solely upon the pleadings in resolving the issue presented. See Weichert Co. of Virginia, Inc. v. First Commercial Bank, 246 Va. 108, 109, 431 S.E.2d 308, 309 (1993). When considering the pleadings, "the facts stated in the plaintiffs' motion for judgment [are] deemed true." Glascock v. Laserna, 247 Va. 108, 109, 439 S.E.2d 380, 380 (1994).

Tomlin v. McKenzie, 251 Va. 478, 480, 468 S.E.2d 882, 884 (1996).

Similarly, upon reviewing a demurrer, the court will accept the facts alleged in the

pleading as true to determine the legal sufficiency of the claim. Fun v. Virginia Military

Institute, 245 Va. 249, 252, 427 S.E.2d 181, 183 (1993). If the facts, taken as true, allege a cause

of action cognizable in Virginia and upon which relief can be granted, the demurrer should be

denied. See Burns v. Board of Supervisors of Fairfax County, 218 Va. 625, 627, 238 S.E.2d 823,

825 (1977).

B. Father's Plea in Bar and Demurrer

Father based his plea in bar and demurrer on res judicata principles. However, allowing

reconsideration of the child's best interests upon an allegation of a substantial change in

circumstances is meant to *avoid* the bar that would be otherwise imposed by res judicata. "The

purpose of the changed circumstances requirement is to avoid the bar on relitigation that would

otherwise be imposed by res judicata." Parish v. Spaulding, 26 Va. App. 566, 573, 496 S.E.2d

91, 94 (1998), aff'd, 257 Va. 357, 513 S.E.2d 391 (1999); see also Code § 20-124.2(E) (authorizing the courts to maintain jurisdiction over custody and visitation issues).

Here, mother's petition alleged a change in circumstances and set forth facts supporting that allegation. Mother stated that "Kylie has been attending preschool in South Carolina, and has formed bonds with her friends, neighbors and family, including her big step-brother Dakota." Mother also stated that she had sold her house in Northern Virginia, that she was pregnant with Jones's child, and that Kylie had "formed an emotional attachment to her unborn sibling." Mother based her allegations of a change in circumstances on events that transpired during "more than eleven months" of Kylie's residence in South Carolina. These allegations sufficiently set forth that a change in circumstances had occurred since she and Kylie moved to South Carolina. We find that mother pled a cause of action cognizable in Virginia, and the trial court did not err in denying father's plea in bar and overruling father's demurrer.

### III. The Trial Court Entered an Order Consistent with this Court's Opinion in Sullivan I and Did Not Err in Permitting an Extended Evidentiary Hearing

Father contends that the trial court disregarded this Court's opinion in Sullivan I and entered an order inconsistent with it. Father also contends that the trial court erred in "permitting [the] extended evidentiary hearing" held on January 6-7, 2003. We disagree.

In Sullivan I, we determined that the evidence "clearly established that the proposed relocation reflected the preferences of the mother and Jones, not necessitous or other compelling circumstances." Sullivan I, 38 Va. App. at 784, 568 S.E.2d at 436. We further held that

> the instant record demonstrates few, if any, benefits to Kylie, a
> very young child, from relocation hundreds of miles from her
> father. To the contrary, the evidence clearly establishes that the
> move would disrupt the positive involvement and influence of
> father in Kylie's life, a result at odds with her best interests.

Id. at 784-85, 568 S.E.2d at 436. Accordingly, we held that, "under the circumstances of this case, the decision to disturb the 'status quo' was plainly wrong and unsupported by the evidence." Id. at 785, 568 S.E.2d at 436.

We determined in Sullivan I that wife failed to carry her burden of showing that relocation was in Kylie's best interests. Mother's evidence proved only that the move would benefit her, while other evidence in the case showed that the move would be detrimental to the father's relationship with Kylie. We therefore reversed the trial court's judgment allowing relocation and remanded the case "for further proceedings consistent with this opinion." Our opinion was issued on August 27, 2002.

On September 24, 2002, father filed a motion requesting the trial court to enter an order consistent with our decision in Sullivan I. On September 25, 2002, mother filed a petition seeking permission to remain in South Carolina with Kylie. The trial court conducted a limited hearing on father's motion and, consistent with this Court's decision in Sullivan I, by order dated November 22, 2002, annulled its November 30, 2001 order allowing relocation. Mother's original petition to relocate—which was the subject of our decision in Sullivan I—was thereby denied, and the court's June 29, 2001 visitation order was reinstated. We find that, by the entry of the November 22, 2002 order, the trial court complied with this Court's decision in Sullivan I.

Father also complains that the trial court disregarded Sullivan I because it permitted an extended evidentiary hearing on January 6-7, 2003. However, the record reveals that two petitions remained pending after the November 22, 2002 order—mother's petition seeking permission to remain in South Carolina and father's December 6, 2002 petition for primary physical custody. The January 6-7, 2003 hearing was therefore necessary because any request for relocation or for a change in custody requires that the court ascertain what is in the child's best interests at that time. Sullivan I, 38 Va. App. at 781, 568 S.E.2d at 434; Goodhand v.

- 7 -

Kildoo, 37 Va. App. 591, 599, 560 S.E.2d 463, 466 (2002); Parish, 26 Va. App. at 571, 496 S.E.2d at 93. Father fails to explain how the trial court could have avoided its statutory mandate to hear petitions involving relocation and changes in custody, and we have found no authority supporting father's position. We therefore hold that the trial court did not err in conducting the evidentiary hearing held on January 6-7, 2003.

IV. Trial Court Did Not Err in Determining that Mother Should Retain Primary Physical Custody of Kylie and Be Permitted to Relocate to South Carolina

We view the evidence in the light most favorable to the mother as the party prevailing below. Wright v. Wright, 38 Va. App. 394, 398, 564 S.E.2d 702, 704 (2002). We will not substitute our judgment for that of the trial court unless we find that the judgment was plainly wrong or without evidence to support it. Simmons v. Simmons, 1 Va. App. 358, 361, 339 S.E.2d 198, 199 (1986).

Although no Virginia statute specifically addresses the relocation of a custodial parent, relocation is generally considered to be an aspect of child custody and visitation. Petry v. Petry, 41 Va. App. 782, 789, 589 S.E.2d 458, 462 (2003); see also Goodhand, 37 Va. App. at 599-600, 560 S.E.2d at 466-67. Analogous to custody and visitation disputes, a party seeking relocation must show that a change in circumstances has occurred since the last custody award and that relocation would be in the best interests of the child. Parish, 26 Va. App. at 571, 496 S.E.2d at 93. The party requesting relocation bears the burden of proof on both issues. Bostick v. Bostick-Bennett, 23 Va. App. 527, 535, 478 S.E.2d 319, 323 (1996).

"'Changed circumstances' is a broad concept and incorporates a broad range of positive and negative developments in the lives of children." Parish, 26 Va. App. at 573, 496 S.E.2d at 94. The requirement has dual purposes. First, requiring a showing of changed circumstances favors the status quo because stability and predictability usually benefit the child. See Hughes v. Gentry, 18 Va. App. 318, 322, 422 S.E.2d 448, 451 (1994). Second, a showing of changed

- 8 -

circumstances avoids the bar on relitigation that would otherwise be imposed by res judicata. Parish, 26 Va. App. at 573, 496 S.E.2d at 94. "Whether a change in circumstances exists is a factual finding that will not be disturbed on appeal if the finding is supported by credible evidence." Ohlen v. Shively, 16 Va. App. 419, 423, 430 S.E.2d 559, 561 (1993) (quoting Visikides v. Derr, 3 Va. App. 69, 70, 348 S.E.2d 40, 41 (1986)).

Here, the trial court determined that mother proved a change in circumstances and, taking into consideration the factors set forth in Code § 20-124.3, that it was in Kylie's best interest that she be permitted to remain in South Carolina with her mother. We find no error in that determination. "The trial court's determination of the child's best interests 'is a matter of discretion . . . , and, unless plainly wrong or without evidence to support it, the court's decree must be affirmed.'" Sullivan I, 38 Va. App. at 783, 568 S.E.2d at 435 (quoting Bostick, 23 Va. App. at 533, 479 S.E.2d at 322).

The trial court made the following findings, using the factors set forth in Code § 20-124.3 as its matrix:

> 1. The child is an active child, is in good health, "academically above level," and "at her age level" socially and emotionally.
>
> 2. The parents are in good health, and mother's multiple sclerosis disease is in remission. Both parents are college educated.
>
> 3. Each parent has a positive, loving relationship with Kylie and is concerned with her well-being. "They could be described as doting parents."
>
> 4. Kylie has a happy and fulfilling relationship with her stepfather, Steven Jones, and her stepmother, Lynn Sullivan. She has a close relationship with her maternal and paternal grandparents. The mother gave birth to a baby boy in October 2002. Kylie was involved with her mother's pregnancy, and mother described Kylie's relationship with the new baby as "incredibly close." Kylie's relationship with her stepbrother was described as "warm."
>
> 5. Mother has been the primary caretaker in Kylie's life; she has been the "organizer of [Kylie's] life" and "has consistently been

the one who found appropriate daycare . . . [and] preschools." She has "consistently kept the father informed of options and her thinking process. She has been the first one to respond to her child's medical emergencies" such as Kylie's febrile seizures. When informed of the child's seizures, father immediately responded with his presence and attention. Mother has enrolled Kylie in a pre-Kindergarten program in South Carolina and in Sunday School. She is also enrolled in a soccer program. Mother "has been generally more assiduous than [father] in getting into the nitty-gritty of Kylie's preschool curriculum," and she generally takes "the lead" on this issue.

6. "There is no evidence . . . that these parties are anything but willing to cooperate to allow each other to see Kylie." The videotape that was reviewed shows the four parents in the case to be extremely cordial to each other. Each parent offered expanded visitation should the other be awarded custody. No "hostility or even nastiness" was observed between the parties.

7. Kylie is attached to her mother and, in her four years of life, has lived with mother as her primary caretaker. She is spending more time with her in South Carolina and less in daycare, leaving daycare at about two and then going home to be with mother and her baby brother. Mother intends to be at home when Kylie is not in school. Mother would not be able to continue this arrangement were she to return to Northern Virginia. The job market for mother in Northern Virginia is less favorable than a year ago. Kylie is also attached to her father; her affection for her father is "obvious and genuine." No evidence established that the relocation has made the child more "distant" in her relationship with the father. The father proposed to put Kylie in a daycare center at his place of employment, where his wife also works, from 8 a.m. until about 5 p.m. The curriculum there approximates that in which Kylie is engaged in South Carolina. Kylie has some difficulties with the long car rides when mother brings her to Virginia for visitation. Father has exercised more visitation with Kylie since the relocation to South Carolina than he had before, although the intervals between visits are longer.

After detailing the above findings, and commenting on the particular weight she placed on

mother's primary custodial role in Kylie's entire life, the trial judge concluded:

The mother's testimony as to her child's life in South Carolina obviously is full and complete and detailed. . . . It is what the child has been living for the past year. . . . Let me reiterate the facts of her life in South Carolina that I find compelling: her close and continuing attachment with her mother; the fact that her mother has

more time to spend with her in South Carolina; her relationship with her new sibling as well as her half-brother; her integration into the community – school, church, family, friends, extracurricular activities – the attractive environment in which she lives. . . . I mean, the environment is very attractive almost anywhere.

Referencing the findings of fact it had made, the trial court granted mother's petition to relocate and denied father's petition for custody, finding "it would be in Kylie's best interests to continue to live with the parent who has always been her primary custodian in South Carolina." We find that the court's decision was based on a proper consideration of the evidence and the factors found in Code § 20-124.3 and that the evidence supports the conclusion reached. We therefore cannot say that the decision was plainly wrong, and we affirm the trial court's determination that the best interests of Kylie will be served by continuing to reside in South Carolina with her mother as primary physical custodian.

V. Mother's Petition Did Not Improperly Bootstrap the Effects of Kylie's Relocation

Father contends that the trial court should not have considered the changes in Kylie's life that occurred after mother relocated to South Carolina pursuant to the trial court's order which was subsequently reversed on appeal. Father's argument rests on two grounds. First, father believes that the matter of Kylie's relocation was decided by this Court in Sullivan I and should not have been revisited by the trial court. Second, because Sullivan I reversed the trial court's decree permitting relocation, father contends mother should not be permitted to support her petition with events that have occurred in contravention of that decision. Although we acknowledge the many facially troublesome aspects of this relocation case, resulting mainly from the passage of time, mother's actions were consistent with the trial court's order permitting

relocation and did not contravene established law[1]; nor did the trial court err in considering her petition and the evidence that supported it.

Father's argument ignores our clear holding in Parish, a custody and relocation case. There, we rejected the appellant-father's contention that appellee-mother could not rely upon the change in circumstances that occurred after she relocated without court approval. We upheld the trial court's retroactive approval of mother's relocation request.

> If the court could not retroactively approve a move or order a change in custody after an unapproved relocation has taken place, having before it evidence that the relocation of the children or the modification of custody would be in the best interests of the children, the court would be required to act contrary to the best interests of the children. We decline to establish such a rule.

Parish, 26 Va. App. at 572, 496 S.E.2d at 94. Because the best interests of the child is our paramount concern, Keel v. Keel, 225 Va. 606, 612, 303 S.E.2d 917, 921 (1983), positive changes in a child's life cannot be disregarded simply to "punish" mother. See Parish, 26 Va. App. at 572, 496 S.E.2d at 94.

Finally, we note mother filed a proper petition subsequent to our decision in Sullivan I, alleging and then proving that a change in circumstances had occurred and that remaining in South Carolina was in Kylie's best interests. The trial court found that Kylie's best interests would be served by her continuing residence in South Carolina with her mother. We are bound by that determination on appeal because it is supported by the evidence.

---

[1] We also note that the record reflects father never requested a stay of the November 30, 2001 order pending appeal, see Norfolk Div. of Social Services v. Unknown Father, 2 Va. App. 420, 423, 345 S.E.2d 533, 534 (1986), nor did he seek to enjoin mother's move pending the outcome of the case on appeal. Cf. Parish v. Spaulding, 257 Va. 357, 363, 513 S.E.2d 391, 394 (1999) (noting that father could have sought sanctions against mother for violating an injunction).

VI. The Trial Court Did Not Apply a *De Facto* Unity of Interests Analysis

Father also contends that the trial court applied a *de facto* unity of interests analysis in determining Kylie's best interests. The unity of interests doctrine – which holds that whenever the best interests of the parent are served, so too are the best interests of the child – was eschewed by our Court in Cloutier v. Queen, 35 Va. App. 413, 545 S.E.2d 574 (2001). Though it is true that some of the factors the court considered related to the mother's welfare as well as Kylie's, viewed in its totality we find that the evidence supports the court's ruling that remaining in South Carolina in the custody of her mother serves Kylie's best interests. See Parish, 26 Va. App. at 575, 496 S.E.2d at 95; see also Wheeler v. Wheeler, 42 Va. App. 282, 291, 589 S.E.2d 698, 703 (2004).

VII. Trial Court Did Not Err in Denying Father's Petition for a Change in Custody

Father assigns error to the trial court's denial of his petition for a change in custody. Because the trial court's decision was supported by the law and the evidence, we affirm its denial of father's petition.

In a dispute over custody, the party seeking a change must show that a change in circumstances has occurred since the last custody award and that a change in custody would be in the best interests of the child. Keel, 225 Va. at 611, 303 S.E.2d at 921. The party requesting a change in custody bears the burden of proof on both issues. Bostick, 23 Va. App. at 535, 478 S.E.2d at 323.

Here, the trial court did not find that father proved a change in circumstances. Indeed, the trial court never ruled on this question and father never objected to its failure to rule. Assuming, without deciding, that in the absence of his own proof father can rely on the change in circumstances proved by mother in support of her petition, we nonetheless find father's petition for primary physical custody was properly denied because he failed to prove that a change in

- 13 -

custody would be in Kylie's best interests.  See Simmons, 1 Va. App. at 362, 339 S.E.2d at 200 (1986) (upholding the trial court's determination that father failed to show a change in custody was in the best interests of the child).

After hearing evidence presented by father, the trial court made the following comment: "It is somewhat of a skeletal presentation as to what this child's life [with father] would be like. I don't know that he could have done any better than that, but I don't have much information about anything else in his life – who the child's friends would be, or whatever."  Based on this evidence, together with mother's evidence supporting her petition for relocation discussed earlier, we cannot conclude that the trial court erred.  Its determination that primary physical custody should remain with mother is supported by the evidence, and we will not disturb that decision on appeal.  "The trial court's determination of the child's best interests 'is a matter of discretion . . ., and, unless plainly wrong or without evidence to support it, the court's decree must be affirmed.'"  Sullivan I, 38 Va. App. at 783, 568 S.E.2d at 435 (quoting Bostick, 23 Va. App. at 533, 479 S.E.2d at 322).  Therefore, because father failed to show a change in custody would be in Kylie's best interests, we affirm the court's decision denying his petition.

VIII.  Trial Court Did Not Err in Determining Father's Visitation Rights

Father argues further that the trial court erred in determining his visitation rights.  He contends that the trial court denied him the "regular and frequent" contact required by our decision in Sullivan I.  We noted in Sullivan I that the expert witnesses at trial "agreed that more frequent visitation between father and Kylie was preferable to reduced contacts" and that Kylie's attachment to, and bond with, her father "demonstrably benefited the child."  Sullivan I, 38 Va. App. at 783-84, 568 S.E.2d at 435.  The trial court considered and rejected testimony provided by father in the instant case that his relationship with Kylie was affected by the less frequent visitation resulting from mother's and child's move to South Carolina.  The trial court

- 14 -

found that "the attachment I see today is extremely warm. It is extremely warm. It's very nice. . . . I know that Mr. Sullivan is alleging that she is distant and difficult to talk to at first, but I don't particularly see that in the testimony of the preschool teacher and in the videos that I saw." The court's factual finding is supported by the evidence and, therefore, we will not disturb it on appeal. Additionally, the trial court expanded visitation opportunities for father so that he could continue his beneficial relationship with Kylie and substantially increased the father's periods of visitation with Kylie, totaling 95 days throughout the year. We therefore find that the trial court's visitation order was not error.

### IX. Attorney's Fees

Both parties have argued for attorney's fees in this case. Neither party, however, develops the arguments on appeal. We therefore will not address them. Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992).

### X. Conclusion

For the foregoing reasons, we affirm the decision of the trial court.

Affirmed.