# CIRCUIT COURT OF NELSON COUNTY

Atlantic Coast Pipeline, L.L.C.

    v.

Nancy L. Avery

Case No. CL15000280-00

Atlantic Coast Pipeline, L.L.C.

    v.

Wintergreen Country Store
Land Trust

Case No. CL15000263-00

May 9, 2016

By Judge Michael T. Garrett

Atlantic Coast Pipeline, L.L.C. (hereinafter "ACP") is a company organized under the laws of the State of Delaware and is in the business of underground storage and transportation of natural gas. ACP is subject to the jurisdiction of the Federal Energy Regulatory Commission ("FERC"). ACP is currently seeking regulatory approval from FERC for a new natural gas transmission line extending from West Virginia through the Commonwealth of Virginia and into North Carolina. In order to obtain FERC approval for the proposed pipeline, ACP must conduct surveys, testing, appraisals, etc. for submission to FERC in the approval process. Each of the landowners listed as respondents in this matter owns property on the route of the proposed pipeline. ACP, pursuant to Virginia Code § 56-49.01, has sent notice to the landowners requesting permission to inspect their land along the proposed route. The respondent landowners have either denied permission to ACP for the requested access or have failed to respond; therefore, ACP has sent each resident landowner a notice of intent to enter by certified mail, return receipt requested. ACP has filed this Petition for Declaratory Judgment asking the Court to resolve this controversy and requesting an order granting them the authority to enter the property without interference by the respondents.

The respondents have filed numerous pleadings, including: (a) motion to stay this proceeding pending the decision of the writ panel of the Supreme Court of Virginia; (b) pleas in bar challenging the authority of ACP to utilize Virginia Code § 56-49.01; (c) demurrers alleging that § 56-49.01 of the Code of Virginia is unconstitutional for various reasons; and (d) demurrers alleging that ACP has not complied with the statutory notice requirements of Virginia Code § 56-49.01(B) and (C).

*Issues and Opinion*

A. *Motion for Extension for Filing Responsive Pleadings*

The respondent Wintergreen Country Store Land Trust filed a motion for extension of twenty-one days to file a demurrer and/or answer. The Court grants the motion of Wintergreen Country Store Land Trust for an extension of time in which to file a demurrer and/or responsive pleadings, as the Court finds that the pleadings were served on Mr. Agelasto, as trustee, the evening before he left the country on a preplanned trip. Accordingly, Wintergreen Country Store Land Trust is granted until March 2, 2016, to file responsive pleadings. Therefore, the Court finds that the responsive pleadings, already filed on or before about March 2, 2016, by Wintergreen Country Store, have been timely filed.

## B. *Motions for Stay or Continuance*

Respondents have filed written motions for stay and made oral requests that the Court stay or continue the proceedings in these matters pending the outcome of the petition for appeal filed in the Supreme Court of Virginia in the case of *Gale D. Williams et al. v. Mountain Valley Pipeline, L.L.C.* (5 CV Record # 151891). The Supreme Court has now refused to grant the petition by Order entered March 7, 2016. Therefore, this Court will not stay nor continue these proceedings.

## C. *Plea in Bar*

### 1. *Standard for Plea in Bar*

"[A] plea in bar is a defensive pleading that reduces the litigation to a single issue," *Kroger Co. v. Appalachian Power Co.*, 244 Va. 560, 562, 422 S.E.2d 757 (1992), "which if proven creates a bar to the plaintiff's right of recovery." The party asserting the plea in bar carries the burden of proof. In the absence of an evidentiary hearing, the standard of review for a plea in bar is that similar to that of a demurrer. *Sullivan v. Jones,* 42 Va. App. 794, 595 S.E.2d 36 (2004). "Where no evidence is taken in support of a plea in bar, the trial court . . . [considers] solely the pleadings in resolving the issue presented." *Gray v. Virginia Sec'y of Transp.*, 276 Va. 93, 97, 662 S.E.2d 66 (2008) (quoting *Niese v. City of Alexandria,* 264 Va. 230, 233, 564 S.E.2d 127 (2002)). Therefore, the Court must take the facts as stated by the plaintiffs in the pleadings as true in order to rule on the plea in bar.

### 2. *Does the Statute Apply Only to Public Service Companies and Is ACP a Public Service Company Under the Law?*

Respondents in the plea in bar, assert that ACP cannot be granted access to enter the landowner's property pursuant to Virginia Code § 56-49.01, arguing that ACP is not a Virginia Public Service Company and that only a Virginia Public Service Company can utilize the provisions of this Code Section. Respondents rely upon the location of Virginia Code § 56-49.01 in Title 56 (labeled "Public Service Company") and location under Chapter 2 (labeled "Creation and Powers of Public Service Corporations"). Respondents argue that, based upon the location in Title 56, Chapter 2, that Virginia Code § 56-49.01 is only available to Virginia Public Service Companies. The respondents rely upon *Bluegrass Pipeline Co. v. Kentuckians United to Restrain Eminent Domain, Inc.*, 478 S.W.3d 386 (Ky. 2015), to support their position that the location within a title and the headings dictates the application of the statute. However, the holding in *Bluegrass Pipeline Co.* is based on Kentucky law regarding headings and is inapplicable to the case at bar. Under long-settled principles of Virginia

law, the headings of statutes are not part of the statute. In determining the appropriate statutory construction, the Court of Appeals held in *Eddine v. Eddine*, 12 Va. App. 760, 764, n. 2, 406 S.E.2d 914 (1991), that a court must look at the contents of the statute and determine if its application is much broader than its location in a particular title might suggest. Therefore, the location within titles and chapters is not dispositive of the application of the statute, but rather the court must look at the express language of the statute.

The first provision of Virginia Code § 56-49.01(A) provides as follows:

> Any firm, corporation, company, or partnership, organized for the *bona fide* purpose of operating as a natural gas company as defined in 15 U.S.C. § 717a may enter upon property . . . .

Thus by its express terms, Virginia Code § 56-49.01 does not require that an entity be a Virginia recognized public service entity in order to utilize right of entry under the applicable statute. The statute is void of any reference to "public service company" or public service corporation. Further, to accept respondents' argument in the plea in bar would render much of the language of Virginia Code § 56-49.01 meaningless. In particular, it would require the Court to ignore the language "any firm, corporation, company or partnership organized for the *bona fide* purpose of operating a natural gas company as defined by 15 U.S.C. § 717a" and substitute the language "public service company." As the Court held in *Hubbard v. Henrico, L.P.*, 255 Va. 335, 341, 497 S.E.2d 335 (1998), the statute should be construed to avoid rendering its term meaningless. As Judge Ricketts recently held in *Atlantic Coast Pipeline, L.L.C. v. Wadsworth*:

> Code of Virginia § 56-49.01(A) specifically addresses "any . . . company organized for the *bona fide* purpose of operating as a natural gas company as defined in 15 U.S.C. § 717a." Thus, the application of the statute turns upon a definition borrowed from the U.S. Code rather than an implied definition suggested by its placement within the Code of Virginia — a form of statutory interpretation this Court cannot employ. Va. Code § 1-217 ("The headlines of the sections printed in black-face type are intended as mere catchwords to indicate the contents of the sections and do not constitute a part of the act of the General Assembly.").

*Atlantic Coast Pipeline, L.L.C. v. Wadsworth*, 2015 Va. Cir. LEXIS 234, at *2 (Augusta Cnty. 2015)

Therefore, the Court holds that, based upon the clear, unequivocal language of the statute, the provisions of Virginia Code § 56-49.01 are

applicable and available to a natural gas company, regardless of whether it is deemed to be a Virginia Public Service Company.

While the Court finds that ACP does not need to be deemed a "public service company" to exercise the rights as set forth in the clear language of Virginia Code § 56-49.01, the Court further finds that under definitions as set forth in Virginia Code § 56-605, ACP nonetheless would qualify as a "public service company." Under Virginia Code § 56-605, a "natural gas utility" is defined as an investor-owned public service company engaged in the business of furnishing natural gas service to the public.

For the foregoing reasons, the plea in bar is denied.

### Demurrers

#### A. *Standard for Demurrers*

The Court must apply settled principles of law in considering the demurrers. A demurrer "admits the truth of all material facts that are properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred from the alleged facts." *Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125, 129, 523 S.E.2d 826 (2000) (quoting *Cox Cable Hampton Rds., Inc. v. City of Norfolk*, 242 Va. 394, 397, 410 S.E.2d 652 (1991)). The Court may consider the pleadings as well as the exhibits, and take as true "all fair inferences deductible therefrom." *P. M. Palumbo, Inc. v. Bennett*, 242 Va. 248, 249, 409 S.E.2d 152 (1991). However, a "demurrer does not admit the correctness of the pleader's conclusions of law." *Fox v. Custis*, 236 Va. 69, 71, 372 S.E.2d 373 (1988) (citation omitted).

#### B. *Was the Service of Process Improper Due to the Hour or Location of Service?*

The respondent Wintergreen Country Store Land Trust filed a demurrer alleging that service of process was improper based upon the time of night that the process was served and based upon service made at a different address than listed in the complaint. The Court finds that any objection to the service of process was waived by a general appearance as the respondent did not file a motion to quash pursuant to § 8.01-277 of the Code of Virginia. However, even had the respondents filed the appropriate motion to quash, the Court, nonetheless, would have, and does, deny the motion, as there is no requirement in Virginia law that a respondent be served at a particular time or at a certain address. The address in the complaint is provided to afford the person serving the process an address upon which to begin looking for the respondent, but the law does not require that the service be made there, nor does it prohibit service after 9 p.m. Thus, the demurrer based upon service is overruled.

## C. *Is the Landowner the Proper Party or Should a Lessee Be the Named Party?*

The respondent also demurs, arguing that the Wintergreen Country Store Land Trust is not the proper party to this proceeding, but rather the proceeding should have been brought against the lessee, Rockfish Valley Foundation. The Court overrules this demurrer, as Wintergreen Country Store Land Trust, as the owner, is the only appropriate party under § 56-49.01 of the Code of Virginia. The complaint properly lists the owner of the property in accordance with Virginia law. From a practical standpoint, only the owner of property would have knowledge of a tenant, not a person searching land records. Further, were the action to be brought against the tenant and not the owner, it would have been demurrable. Therefore, this basis for a demurrer is overruled.

## D. *Are Archaeological and Environmental Concerns a Proper Basis for a Demurrer?*

Respondent Wintergreen Country Store Land Trust raises numerous issues by demurrer with regard to archaeological and environmental concerns. While these concerns are important, they are the province of the FERC in determining the appropriate route for the proposed pipeline and areas to avoid. These concerns do not make this action demurrable, and, accordingly, this demurrer is overruled.

## E. *Does the Statute Authorize Taking of Private Property in Violation of Virginia Constitution, Art. I, § 11?*

The respondents, in their demurrers, argue that Virginia Code § 56-49.01 is unconstitutional because it authorizes a "taking" of private property in violation of the Virginia Constitution. Respondents cite *Kaiser Aetna v. United States,* 444 U.S. 164, 100 S. Ct. 383, 62 L. Ed. 2d 332 (1979), for the proposition that "one of the most essential sticks in the bundle of rights that are commonly characterized by property" is the right to exclude or prevent others from entering one's property. The respondents argue that depriving the landowner of the right to exclude, even temporarily, amounts to a "taking."

The cases relied upon by the respondents in support of the "taking" argument are distinguishable, as they all dealt with significant and longstanding burdens on the landowners' use of the property, rather than temporary access to survey as presented to the Court in this case. *Harborland & Hotel Co. v. United States,* 260 U.S. 327, 43 S. Ct. 135, 67 L. Ed. 287, 58 Ct. Cl. 701 (1922) (firing munitions over a summer resort constitutes a permanent taking); *United States v. Causby,* 328 U.S. 256, 66 S. Ct. 1062, 90 L. Ed. 1206, 106 Ct. Cl. 854 (1946) (frequent and regular flights of army aircraft at a low altitude over respondent's property resulted in a taking);

*Kaiser Aetna v. United States,* 444 U.S. 164, 100 S. Ct. 383, 62 L. Ed. 2d 332 (1970) (attempt by federal government to convert private pond into permanent navigable waterway open to public). While the Supreme Court of the United States has held that the right to exclude is one of the fundamental sticks in the bundle of property rights, in *Prune Yard Shopping Ctr. v. Robbins,* 447 U.S. 74, 100 S. Ct. 2035, 64 L. Ed. 2d 741 (1980), the Court held that this right is not absolute.

For more than one hundred years and continuing to the present, statutes have authorized utilities to conduct surveys on private property before exercising imminent domain authority. In the Virginia Code of 1819, turnpike companies were given the "full power and authority to enter upon all lands and tenements through which they may judge is necessary to make said road; and to lay out the same according to their pleasure." 2 Va. Rev. Code, Ch. 234, Section 7 (1819). There are numerous statutes in Virginia authorizing entry to survey including the right to survey by public service companies (Va. Code § 56-49), surveys by localities and condemners (Va. Code § 25.1-203), mine exploration surveys (Va. Code § 45.1-161.311:2), survey rights for localities in connection with any project for which it is authorized to appropriate money (Va. Code § 15.2-2604(9)), State Water Control Board surveys (Va. Code § 62.1-44.20), Commissioner of Labor surveys (Va. Code § 40.1-51.34), surveys by Pollution Control Board (Va. Code § 10.1-1315), surveys by Sanitation Commission (Va. Code § 21-248(8)), surveys by Commissioners of Highways (Va. Code § 33.2-1011), and authorization for adjacent landowners to explore and survey mines if the landowner believes the mine is on his property (Va. Code § 45.1-161.311:2).

The law in Virginia and the vast majority of the other jurisdictions has for many years recognized numerous exceptions to the right to exclude. The Supreme Court of Virginia in *South & W. Ry. v. Virginia & Sw. Ry.,* 104 Va. 323, 51 S.E. 843 (1905), held that a landowner was not entitled to an injunction prohibiting a railroad company from entering its property and conducting surveys for a new line before exercising eminent domain. Thus, Virginia has long held that there is no absolute right to exclude a temporary access to survey.

As Judge Dillon recently held in *Klemic v. Dominion Transmission, Inc.,* 138 F. Supp. 3d 673 (W.D. Va. 2015):

> "Not every physical invasion is a taking, however." The Supreme Court has recognized that there is a "constitutional distinction between a permanent occupation and a temporary physical invasion." While "permanence and absolute exclusivity of a physical occupation" always give rise to a

compensable taking, "temporary limitations on the right to exclude" do not.

*Id.* at 691 (quoting *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 434, 436, 102 S. Ct. 3164, 73 L. Ed. 2d 868 (1982)).

Contrary to the assertion by the respondents, ACP's right to enter is not unlimited as to the date, scope, or duration under Virginia Code § 56-49.01. Therefore, the Court overrules the demurrer alleging that a temporary entry to survey is a "taking" of private property in violation of the Virginia Constitution.

### F. Does the Statute Authorize Taking of Private Property for Private Use in Violation of Virginia Constitution, Art. I, § 11?

The respondents argue in their demurrers that the pipeline project has not yet been authorized by FERC and, therefore, that ACP is not an "authorized public services provider" of natural gas for which eminent domain can be exercised. Thus, the respondents argue that the surveying is for private, not public use, and, as such, is unconstitutional. For the reasons set forth in the holding on the plea in bar above, as well as the reasons set forth below, the Court finds that the pipeline is for public use.

The argument that the public transmission of natural gas is not for public use ignores longstanding statutes, both state (Va. Code § 56-605) and federal (15 U.S.C. § 717). In the Natural Gas Act, Congress stated:

> [I]t is hereby declared that the business of transporting and selling natural gas for ultimate distribution to the public is affected with a public interest, and the Federal regulation in matters related to the transportation of natural gas and the sale thereof in interstate commerce and foreign commerce is necessary in the public interest.

15 U.S.C. § 717(a) (2015).

Further, the surveys authorized by Virginia Code § 56-49.01 satisfy the public use requirement, as they prevent the unnecessary expense and pointless condemnation of land that is not suitable for the pipeline. Landowners argue that a survey cannot be conducted on the land until the purposed pipeline route has been approved, including the approval of the route and the public necessity found by FERC. This reasoning would require FERC to evaluate a project without the necessary data and make a guess as to the best location of the pipeline. The gathering of data necessary for FERC's approval of an interstate pipeline that will serve the citizens of Virginia is for a public use. Judge Dillon held in *Klemic* that Virginia Code § 56-49.01 "satisfied the taking clause's public use requirement" because it allows a natural gas company to

gather . . . information required . . . by giving it the ability to enter property and conduct a minimally invasive survey. The statute thus facilitates the "transportation and selling" of natural gas, and thereby serves a public purpose.

*Klemic*, 138 F. Supp. 3d at 693.

Many courts have upheld precondemnation survey statutes to prevent the unnecessary condemnation proceedings against landowners whose property might later ultimately prove unsuitable for the pipeline. As the Court held in *Indiana & Michigan Elec. Co. v. Stevenson,* 173 Ind. App. 329, 363 N.E.2d 1254 (1977), when the court explained:

> Properly exercised, the pre-condemnation survey can serve the interest of both the landowner and the public utility. The landowner will have only so much of his land condemned as is needed for the particular utility purpose; and the utility will not be forced to engage in wasteful expenditure of the ratepayer's money by blindly purchasing a "pig in a poke."

*Id.* at 1259.

Thus, survey of the proposed route for the pipeline is not only to determine the "best" route, but also to determine whether a particular parcel is even the appropriate location for the pipeline and thus avoiding buying a "pig in a poke."

Therefore, for the foregoing reasons, the Court finds that, not only is the minimal intrusion not a "taking," even if it were somehow a "taking," it is for public use.

G. *Does the Statute Authorize Taking or Damaging of Private Property Without Just Compensation in Violation of Virginia Constitution, Art. I, § 11?*

Respondents, in their demurrers, argue that Virginia Code § 56-49.01 is unconstitutional because it authorizes taking or damaging of private property without just compensation. As stated above, a temporary minimal intrusion for a survey is not a "taking"; however, by statute, if the survey process results in damages, it is not without compensation. The express terms of Section D of Virginia Code § 56-49.01 provide: "The natural gas company shall make reimbursement for any actual damages resulting from such entry." Thus, the statute, by its very terms, creates a cause of action against.the natural gas company for actual damages caused. Therefore, the statute does not authorize "taking" or damaging without just compensation.

## H. *Does the Statute Authorize an Unconstitutional Illegal Search and Seizure?*

The respondents argue in their demurrers that access granted to ACP to survey constitutes an illegal search and seizure in violation of the Fourth Amendment of the United States Constitution and Article I, § 10, of the Virginia Constitution. The Court finds that Virginia Code § 56-49.01 does not constitute a violation of the Fourth Amendment nor the Virginia Constitution. The first case cited by the respondents, *El-Amin v. Commonwealth,* 269 Va. 15, 607 S.E.2d 115 (2005), is a criminal case involving search and seizure issues and admission of evidence. That case is inapplicable to the case at bar, as it dealt with suppression of evidence in a criminal case. The other case cited by respondents, *Presley v. City of Charlottesville,* 464 F.3d 480 (4th Cir. 2006), is a suit under 42 U.S.C. § 1983 against a governmental entity for violation of Constitutional rights under the Fourth Amendment. *Presley* involved a lawsuit against the City of Charlottesville for egregious action under color of state law. In *Presley,* intrusion by the third parties was ongoing, seemingly perpetual, and at the government's direction. Further, the holding in *Presley* was distinguished in *Charlottesville Div. v. Dominion Transmission, Inc.,* 2015 U.S. Dist. LEXIS 132554 (2015), where the Court held:

> And lastly, even if plaintiffs had alleged sufficient facts to show the application of the Fourth Amendment and a meaningful interference of a possessory interest here, their claim would still fail because § 56-49.01, on its face, does not amount to an unreasonable seizure, triggering the warrant requirement. The Fourth Amendment "does not proscribe all . . . seizures, but only those that are unreasonable." *Skinner v. Railway Labor Execs.' Ass'n.,* 489 U.S. 602, 109 S. Ct. 1402, 103 L. Ed. 2d 639 (1989). "What is reasonable . . . depends on all of the circumstances surrounding the . . . seizure and the nature of the . . . seizure itself." *Id.* at 619 (quoting *United States v. Montoya Hernandez,* 473 U.S. 531, 537, 105 S.Ct. 3304, 87 L. Ed.2d 381 (1985)). . . . Rather, the reasonableness determination "reflect[s] a 'careful balancing of governmental and private interests'." *Soldal v. Cook Cnty.,* 506 U.S. 56, 71, 113 S. Ct. 538, 121 L. Ed. 2d 450 (1992) (quoting *New Jersey v. T.L.O.,* 469 U.S. 325, 341, 105 S. Ct. 733, 83 L. Ed. 2d 720 (1985)). . . . In this case, the governmental interests clearly outweigh the private interest. While the plaintiffs certainly have an interest in excluding others from their properties, that interest is outweighed by the interest the Commonwealth has in facilitating the supply of natural gas. And, on its face,

§ 56-49.01 goes no further than is necessary to advance that interest, permitting only a minimally intrusive entry.

*Id.* at \*47-48.

I. *Does the Request for Permission To Inspect Sent by ACP Satisfy Virginia Code § 56-49.01(B)?*

The respondents, in their demurrers, argue that ACP has failed to comply with the statutory requirements of Virginia Code § 56-49.01(B), as the request for permission to inspect does not specifically set forth the date such inspection is proposed to occur. Respondents argue that entry is not deemed a trespass under Virginia Code § 56-49.01(D) only if all of the statutory notice requirements are met. The respondents then argue that based upon the language, the statute purports to abrogate the common law of trespass and should be strictly construed under *Isbell v. Commercial Inv. Assocs.*, 273 Va. 605, 644 S.E.2d 72 (2007).

The respondents argue that the request for permission to inspect stating ACP proposes to begin work "on or about" is too vague to satisfy the requirements of Virginia Code § 56-49.01(B). For the reasons stated below, the Court finds the language in the request for permission to enter stating: "[W]e plan to begin studies along the newly developed route alternatives on or about March 26, 2015" to be legally sufficient for the initial notice (request for permission to enter) under Virginia Code § 56-49.01(B).

The request for permission to enter under Virginia Code § 56-49.01(B) is simply that, a request for the consent of the homeowner to allow the survey crews to enter the property. If the homeowner consents in writing, then that is the end of the notice required under Virginia Code § 56-49.01, as thereafter, ACP may enter based upon the written consent, not based upon further notice required by the statute. In other words, the specificity of the "proposed date" of entry is not critical, because, unless the landowner agrees in writing, no entry can occur based upon this initial request. Therefore, the Court finds that the date in the initial notice, the request for permission to enter, although vague, nonetheless, meets the statutory requirements of Virginia Code § 56-49.01.

J. *Does the Notice of Intent To Enter Sent by ACP Satisfy Virginia Code § 56-49.01(C)?*

The respondents in the demurrers argue that the second notices given in these cases under Virginia Code § 56-49.01(C) are legally insufficient, as the statute requires that the notice of the intent to enter shall "set forth the date of the intended entry." In these cases, ACP sent notices of intended entry which included language that ACP intended to commence surveys on the respondent's property "on or after" a specified date. ACP alleges in their petition (paragraph 4) and argues in its memorandum, that Virginia Code

§ 56-49.01(C) only requires that they give notice of the "proposed" date of entry. Therefore, the Court must examine the specific language of Virginia Code § 56-49.01(C).

Before the entry is authorized by statute (without written consent) and not deemed a trespass under Section D, a proper notice of intent to enter must be given to the landowner. The language of Virginia Code § 56-49.01(C) provides: "(i) Notice of intent to enter shall be sent to the owner by certified mail; (ii) Set forth the date of the intended entry; and (iii) Be made not less than fifteen days prior . . . ." Thus, the General Assembly was quite explicit that not only was the landowner entitled to notice of *date of intended entry,* but not less than fifteen days' notice.

Based upon the well settled principle of statutory construction, the Court must "determine the legislative intent from the words used in the statute applying the plain meaning of the words unless they are ambiguous or would lead to an absurd result." *Wright v. Commonwealth,* 278 Va. 754, 759, 685 S.E.2d 655 (2009). The Court finds that the fifteen days' notice required under Virginia Code § 56-49.01(C) was included by the General Assembly for a purpose. The clear purpose was to provide landowners advance notice that they are required by law to allow persons on their property to survey, whom they have not personally granted permission. This enables the landowner to plan accordingly in the event that they wish to be present or have a designated representative present.

The petitioner, in the oral argument, as well as in the pleadings, asked that the Court read all of the letters as a whole. The Court has done so. The initial letters, requesting permission to enter, included an attachment setting forth information regarding the survey process. The "Survey Process Notice" included a notation that there would be at least five crews dispatched to the property including the Flagging Crew (to make the route selection and clear a path), Survey Crew (to take survey measurements for map preparation), Environmental Crew (to collect environmental data along the pipeline route), Cultural Resource Crew (archaeology to look for significant cultural resources), and the Soil Resistivity Crew (to take soil measurements to design the pipeline corrosion prevention system). This notice also indicated that the crews would be working on the property at different times and it would take approximately 30 days to complete the work.

Certainly, landowners have a right to be present upon their own property, to observe the process, if they so desire, to insure that the statutory requirements are not violated. The landowner may want to insure that mechanized equipment is not used (as prohibited by Virginia Code § 56-49.01), archaeological artifacts not be removed (ACP indicated in the attachment to the initial notice that they would take, catalog, clean, and remove archaeological artifacts from the parcels), gates closed, pets confined, animals protected, and any damage done to the property by the

crews documented. The notice also affords the landowners an opportunity to plan ahead so their own intended use of their property will not be disturbed by the introduction of one of five work crews. The 15 days' notice of the intended date of entry affords the landowner time to plan and or to contact ACP in the event that there is a serious issue with regard to that specific date such as a family event (reunion or wedding by necessity planned more than six weeks in advance).

A notice that someone will appear "on or after" a stated date, by its very terms, implies that in all likelihood it will not be on the stated date. Further, the notice, stating entry will occur "on or after," is deficiently ambiguous as to whether it will occur on the date specified or a day, week, a month, or six months later. A notice that the actions will take place "on or after" does not enable the landowners to protect their interests and, thus, is no notice at all. The provisions of the statute prohibiting use of mechanical equipment and making the company liable for damages is meaningless if the owner has no idea when he must be present.

If the work cannot, and in this case will not, be completed in one day, then notice in such circumstances should at the very least include bracketed dates and amount of time for each of the projected crews. Certainly, a corporation, such as ACP, with expertise in surveying and data collection for proposed pipeline routes, can set forth a more specific date(s) in the notice when the crews will enter the property and the amount of time in terms of days that each crew could be expected to be on the property. Obviously, ACP has examined the land records to determine the size and boundaries of the parcels involved, such that they can give a fair approximation of the timeframes involved.

If the Court were to read the statute to not require a specific or reasonably specific date for entry upon the property, then the notice would be no notice at all. In effect, if "on or after" the intended date will not commence for one, two, three, or four weeks, and thereafter, the work would continue for a period of 30 days as set forth in the notice, then the notice of the intended date is basically meaningless. If the first ACP crew did not arrive upon the property for a period of two to four weeks after the "on or after" date, and thereafter the five crews came at different times with no specific schedule given to the landowners, then the landowners could be required to endure six to eight weeks of anticipation of the unwanted intrusion and significant interference with the use of their property. The Court finds that such a result was not the intention of the legislature.

The Court recognizes the logistical issues that might arise from the scheduling of the multiple work crews on property; however, the landowners face even more severe logistical issues if they wish to be present during the process beginning "on or after." While the Court recognizes that it is often difficult to give specificity, nonetheless, with five different crews

coming upon property, the Court finds that the Legislature intended that the landowners have more reasonable notice than "on or after." .

While all reasonable inferences in a demurrer must be found in favor of the complaint, the Court cannot find that the notice of intended date of entry in this case meets the requirements of Virginia Code § 56-49.01(C). The Court finds that, regardless of whether or not the statute was passed in derogation of the common law, by the express terms of the statute, the Legislature requires that the landowner be given notice of the intended date of entry. The Court finds that the second notices are legally insufficient, as Virginia Code § 56-49.01(C) requires that the notice shall "set forth the date of the intended entry," and the Court finds that language "on or after" does not set forth the date of intended entry. The provisions of this statute require more. Therefore, for the foregoing reasons, the Court sustains the demurrer, finding that the notice of the date of intended entry is not legally sufficient.

K. *Motion Objecting to Hearing on Motion for Entry of Order Allowing Entry on Property*

Respondents objected to a hearing on the motion for entry of order allowing entry on property as premature, given that the Court had to rule on the motions for stay, pleas in bar, and demurrers prior to considering the motion for an order of entry. Based upon the rulings set forth above on the demurrers, the Court finds this motion is moot.

## Holdings and Order

For the reasons set forth above, the Court rules and orders as follows.

1. The motion for extension for filing responsive pleadings by Wintergreen Country Store Land Trust is granted to March 2, 2016, and the pleadings filed on or before that date are deemed filed.

2. The motions for stay or a continuance of these proceedings pending the outcome of the *Williams v. Mountain Valley Pipeline, L.L.C.,* case are denied.

3. The plea in bar is denied.

4. The demurrers based upon service challenges are overruled.

5. The demurrers based upon the challenge as to proper parties is overruled.

6. The demurrers based upon archaeological and environmental concerns are overruled.

7. The demurrers based upon constitutional challenges to Virginia Code § 56-49.01 are overruled.

8. The demurrers based upon sufficiency of the request to enter under Virginia Code § 56-49.01(B) are overruled.

9. The demurrers based upon the sufficiency of the notice of the intended date to enter under Virginia Code § 56-49.01(C) are sustained. The petitioner

is granted leave to file an amended petition, along with revised notices of intended dates of entry in accordance with this opinion. The respondents will have twenty-one days to file responsive pleadings.

10. The motion objecting to the hearing on the motion for entry of an order allowing entry of the property is not addressed, as a ruling on this is moot based upon the rulings on the demurrers.